**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 11, 2024

**BY ECF**

The Honorable John P. Cronan
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

**Re: *United States v. Surinder Singh Cheema a/k/a "Tana,"* 22 Cr. 618 (JPC)**

Dear Judge Cronan:

The Government writes to request an adjournment of the *Fatico* hearing for defendant Surinder Singh Cheema, a/k/a "Tana," currently scheduled for October 15, 2024. As the Court is aware, on October 7, 2024, the defendant submitted a sentencing submission asserting, for the first time, that his cousin, Vickramjit Singh Khela, used Cheema's nickname, Tana, in connection with the Toronto Drug Debt Shootings discussed in the Government's May 25, 2024 letter that is the subject of the upcoming *Fatico*. On October 8, 2024, the defendant filed under seal two affidavits from Khela in which Khela claimed responsibility for all the messages the Government had attributed to the defendant. The defendant's sentencing submission also requested that Khela be permitted to testify at the *Fatico* hearing by videoconference.

The Government requests the Court adjourn the *Fatico* hearing *sine die*, with the Government to provide a status update by letter in 30 days.

The adjournment is warranted because the defendant's sentencing submission and Khela's affidavits go well beyond merely disputing the inferences to be drawn from the Government's evidence and introduce purported evidence that allegedly contradicts the Government's position that the defendant orchestrated a rash of shootings and threats from the Metropolitan Detention Center ("MDC"). Khela asserts that he adopted Cheema's nickname, "Tana," after Cheema's arrest in the fall of 2022 and that the communications attributed to Cheema are in fact communications from Khela to shoot, kidnap, threaten, and kill people who owed Khela, King, and others drug money. Indeed, Khela's affidavits go beyond the Government's public sentencing submission; they cite evidence from the underlying text exchanges that were not publicly disclosed, *see, e.g.*, Second Affidavit dated Oct. 7, 2024 ¶ 24, and use purported victim names that were also not in the Government's public filing, *id.* ¶ 7; First Affidavit dated September 23, 2024 ¶ 20.[1]

[1] The Government disclosed the underlying messages and records obtained from Peel Regional Police to the defense on an Attorneys' Possession Only/Attorneys' Eyes Only basis. Based on

The defendant first suggested to the Government on September 20, 2024 that an unnamed individual was interested in meeting with the Government and admitting to the conduct attributed to Cheema. On September 25, 2024, the Government asked for information regarding the witness's name and counsel, and demanded that any Rule 26.2 material be produced for the witness (or any other witnesses) by the end of that week. On October 3, 2024, defense counsel provided the email address for the lawyer for the still unidentified witness. On October 7, 2024, the defendant filed his submission referencing the affidavits dated September 23 and October 7. During a phone call on October 10, 2024, Canadian counsel for Khela, who is not a U.S.-licensed lawyer, represented that Khela would not appear for the *Fatico* hearing in person due to the criminal jeopardy he would face by entering the United States, but would be willing to testify or speak with the Government by videoconference from Canada.

Before proceeding with the *Fatico* hearing scheduled for next week, the Government needs additional time to investigate the veracity of the statements in Khela's affidavits. Given Khela's refusal to appear in person, the Government is likely to object to allowing his remote testimony, as permitting him to testify with the intent of affecting these proceedings while avoiding the potential legal consequences of his testimony does not appear to be in the interests of justice. *See Untied States v. Griffin*, No. 11 Cr. 936 (RJS), 2021 WL 3188264, at *2 (S.D.N.Y. July 28, 2021) (finding "generally instructive" for allowing videoconferencing testimony at an evidentiary hearing the Rule 15 standard that courts allow depositions only when "(1) the witness's testimony is material; (2) the [movant] has made good-faith and reasonable efforts to obtain the witness's presence and is unable to do so (that is, that the witness is unavailable within the meaning of the case law); and (3) allowing testimony by such means furthers the interests of justice."). Similarly, whether the affidavits are admissible at a *Fatico* hearing turns on whether the statements in them are "subject to corroboration by other means," and have "sufficient indicia of reliability." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989).

If the affidavits cannot be corroborated and appear to contradict other evidence, that will bear on the scope of the *Fatico* hearing, the affidavits' admissibility, and the defendant's motion to permit Khela to testify remotely. If, after conducting further investigation, the Government believes the affidavits are true, then that will likely moot the need for a *Fatico* hearing and substantially affect the Government's sentencing recommendation. Either way, given the extraordinary nature of the allegations in Khela's affidavits, the Government must be permitted sufficient time to ensure a just outcome in this case.

As the Government has previously noted, because the defendant has already pleaded guilty, there is no Speedy Trial Act or Sixth Amendment right to a "speedy" sentencing. *See Betterman v. Montana*, 578 U.S. 437 (2016). There is only a Fifth Amendment due process right to a prompt sentencing; to make out a due process violation the defendant must show both unfair delay and

---

telephone and email conversations between the Government and Khela's Canadian lawyer, the Government understand that Khela may have obtained the information elsewhere, including from defendants charged in Canada, and did not obtain it from the case file in this case. Khela's lawyer acknowledged previously representing another individual charged in Canada in connection with the events described in Khela's letter, but refused to identify his other former client.

"substantial" prejudice. *See, e.g.*, *United States v. Paul*, 634 F.3d 668, 674 (2d Cir. 2011). "To prove a due process violation as a result of a sentencing delay, the prejudice claimed by the defendant … must be substantial and demonstrable." *Id.* at 675.

Here, the reason for the additional delay is again of the defendant's own making—that is, more than four months after the Government filed its sentencing submission, and only one week prior to the *Fatico* hearing, he has filed a reply containing new factual allegations and introducing new evidence that together materially change the scope of the hearing. *See id.* at 674-75 (finding four-*year* "inadvertent" delay by Government in providing information to Probation did not amount to due process violation). Moreover, there is no substantial prejudice to the defendant caused by an additional short delay. The defendant is subject to a five-year mandatory-minimum sentence, meaning he has no chance at being released during the intervening period.

The Government, the Court, and the public have an overriding interest in ensuring that all relevant evidence is brought to the Court's attention prior to the defendant's sentencing and that no miscarriage of justice occurs. Given the foregoing, an additional 30-day adjournment is warranted.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: /s/ ____________________
Thomas S. Burnett
Jane Y. Chong
Matthew R. Shahabian
Assistant United States Attorneys
(212) 637-1064/-2264/-1046

cc: Dawn Florio, Esq. (by ECF)
Declan Murray, Esq. (by ECF)
Jeffrey Cohn, Esq. (by ECF)