# SODHI LAW
PROFESSIONAL CORPORATION

**Manbir Singh Sodhi**
**Barrister & Solicitor**

October 16, 2024

**DELIVERED VIA E-MAIL**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

**c/o Assistant United States Attorneys:**

Thomas S. Burnett
Jane Y. Chong
Matthew R. Shahabian

Dear Sirs/Madam:

**RE:** ***United States* vs. *Surinder Singh Cheema***
**22 Cr. 618 (JPC)**

---

As you may recall, my office represents Mr. Vickramjit Khela. I write in response to your email of even date and your letter to the Honorable Judge John P. Cronan, dated October 11, 2024.

Having reviewed your letter, I must say, I am concerned that you have misrepresented the content of my communications with your office. Initially, I had hoped that perhaps some of the errors in your writing were simply unintentional or accidental errors. However, upon reading the letter for a second and third time, I realized that attorneys of your stature could not have simply made such glaringly obvious mistakes.

First and foremost, the opening paragraph of your communication indicates that Mr. Khela is the **cousin** of Mr. Cheema. This is not true. In fact, paragraph 1 of both affidavits clearly states that my client is a childhood friend of Mr. Cheema. Neither of the two sworn declarations refer to Mr. Cheema as my client's **cousin**. Hence, I can only assume that you have elevated the relationship in this manner to leave the impression that Mr. Khela is more likely to have fabricated his evidence given the "*familial bond*" shared by the two men. However, nothing could be further from the truth. I believe this to be an intentional misrepresentation.

Second and equally important, the same sentence suggests that my client used the name "**Tana**" in "*connection with the Toronto Drug Debt Shootings*". Again, this is not true. My client has truthfully acknowledged his use of the name "**Tana**". That said, he also clearly stated that this street name was not used to send messages about violence. The fact that others referred to him as "**Tana**" in the messages is not the same as his using the name. You will note that paragraphs 24-

9 George St. N, Unit 102 Brampton, ON L6X 0T6
905-457-2546
msodhi@manbirsodhilaw.com
905-457-0457
www.manbirsodhilaw.com

26 of the September 23, 2024, affidavit explicitly detail Mr. Khela's admission regarding the name "**Tana**". He plainly asserts that he did not use the name when sending messages over Signal. As I understand it, there are **NO** Signal messages or chats authored by or received by the screenname "**Tana**". Yet, your letter to Judge Cronan suggests that my client used this name to orchestrate violence. That is not accurate.

Third, at footnote 1, you state that we have had email correspondence respecting the substance of this matter. The footnote specifically references "**telephone and email conversations**". However, we have never conversed via email regarding the facts of this case, and we have only engaged in a single telephone conversation. I wrote an email to your office on October 10, 2024, but no one replied. I do not consider that a "**conversation**". The suggestion that we have had some back forth in which the facts of this matter were discussed is inaccurate. Moreover, I advised you that my client received certain information from an acquaintance. Yet, the footnote states "*Khela may have obtained information elsewhere*". There is no "*may have*". He did get it elsewhere. He did not get any information from the US case file. Nevertheless, I am confused why any of this matters.

Additionally, Mr. Khela's affidavits clearly assert that he has had prior dealings with both alleged victims. He stated that he met alleged victim 1 "*multiple times*". I do not think it is a stretch to guess that Mr. Khela was able to name the victims given that he has had personal interactions with them. Why then imply that the source of his knowledge is something which your office needs to investigate? It all just seems very strange to me.

Further, the last sentence of the footnote indicates that I acknowledged "*previously representing another individual charged in Canada in connection with the events described in Khela's letter*". Again, that is an inaccurate statement. I did **NOT** indicate that I have represented an individual with respect to the events described in the affidavits. Rather, I simply stated that I previously acted for certain person(s) mentioned by Mr. Khela. Ms. Chong's inquiry was whether I had previously represented anyone named in the declarations. She did not ask about my having acted for a person(s), named by Mr. Khela, in respect of those specific allegations. Thus, I cannot understand why your office would frame my response as if she did. I am not sure what to make of this. The bottom line is that the information reflected in the footnote is wrong.

Finally, your letter suggests the main purpose of an adjournment would be to investigate the "*veracity*" of Mr. Khela's claims. Yet, you fail to advise Judge Cronan that you already possess materials which confirm my client's story. For example, you have the following items:

1. Peel Regional Police Occurrence Report PR240054809 – Narinder Shokar identifies "Vicky Khela" as being involved in a shooting at the home of his business partner;

2. Peel Regional Police Arrest Notice verifying the arrest of the other two people identified by Narinder Shokar in the above report (thereby also supporting the veracity of his statement as to who he believes is behind the violence);

3. Material from the FBI led investigation which indicates that there was a witness in the US who identified Mr. Khela as "**Tana**";

In addition to these items, I am attaching for your review an excerpt from Mr. Khela's Canadian passport that substantiates his travel to Africa. Once more, this information is provided to you in an attempt to illustrate that the Peel Regional Police theory as to the origin of the chat messages is not only erroneous but rather, it is flat out wrong.

I would also like to note that Mr. Khela's willingness to provide information has been known to Counsel for Mr. Cheema since late spring. In or around late May, early June 2024, I notified Ms. Dawn Florio that there was someone else within the local drug trade who was connected to Mr. Cheema and who had been using the nickname "**Tana**". I advised Ms. Florio not to disclose this information to the Southern District of New York US Attorney's Office until I instruct otherwise. Contrary to the belief expressed in your letter, Mr. Khela did not pop out of the "blue" two weeks prior to sentencing. His existence has been known for some time.

In closing, I note that you have now requested a video conference with my client. And while I was open to this last week, after having reviewed your October 11, 2024, I am not so sure my position remains the same. The issues I have raised herein are quite concerning. Additionally, the tone that permeated our telephone conversation has made me re-evaluate the wisdom in permitting your office to interview my client. Mr. Khela is coming forward of his own volition to "**right**" what could very well turn out to be a huge "**wrong**". However, your perceived skepticism of his evidence (rooted in a purely speculative theory) leads me to believe that your position will remain the same irrespective of what my client tells you.

Accordingly, if your office wishes to speak with Mr. Khela, we require an assurance that he will be **completely immunized** from prosecution in the USA as a result of any information he divulges to you. Should you not be prepared to accept such a term, but still wish to have a video call, I will require a list of questions, in advance, that you wish to pose. Mr. Khela is prepared **only** to discuss the content of his two affidavits. The opportunity to question him should not be regarded as a fishing expedition in which your office can explore any desired topic. My client's declarations are clear and concise. He has unequivocally admitted that he is the author of the messages you believe were sent by Mr. Surinder Cheema. He remains willing to tell you this directly. However, after having reviewed your letter of October 11, 2024, for the reasons herein expressed, I cannot allow your office to have unfettered access to my client. Anything short of my suggested arrangement would be a dereliction of duty to Mr. Khela.

As such, if the above parameters are agreeable, then I look forward to scheduling my client's interview with you in the upcoming week. I am available on either October 25 or October 26, 2024, to facilitate same. Mr. Khela can attend my office, and we will set up him in the board room for a video-call. I will participate in the call.

Thank you for your time and consideration. I look forward to hearing from you.

Yours sincerely

Manbir S. Sodhi
Mb/mss

cc. Jeffery Cohn Esq. via email
Dawn Florio Esq. via email