UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————-x
UNITED STATES OF AMERICA

- against - 24-618 (JRC)

SURINDER SINGH CHEEMA
———————————————————————-x

**MEMORANDUM OF LAW IN SUPPORT OF MR. CHEEMA'S POSITION THAT THE ONGOING SENTENCING PROCEDURE VIOLATES HIS RIGHTS TO DUE PROCESS UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

Jeffrey Cohn
212 East 57th Street, 16A
NYC, NY 10022
646-201-5202
jcohnlaw@gmail.com

## PRELIMINARY STATEMENT

Surinder Singh Cheema, hereafter Sunny, respectfully submits this memorandum to persuade the Court that it should not consider the government's allegations of new criminal conduct for the purpose of raising his sentence of incarceration. Despite the fact that the Court has already held proceedings on the new charges pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979), it is clear that these proceedings have deprived Sunny of his Due Process rights under the U.S. Constitution and should be suspended and sentence imposed pursuant to the filings made prior to May 25, 2024.

## STATEMENT OF FACTS

Sunny is a non-violent marijuana transporter who, for a brief period in 2022, agreed to transport cocaine and methamphetamine. His transportation of the latter two drugs spiraled out of control after several loads were lost and Sunny had to transport larger and larger quantities of those drugs to avoid violent repercussions. He was arrested in November, 2022 and has been incarcerated ever since. He agreed to plead guilty and take responsibility for *all* the drugs with which everyone in his conspiracy was involved, which yielded an adjusted U.S. Sentencing Guidelines range of 135-168 months. However, the government agreed to permit him to plead guilty to a lesser included offense than that for which he was indicted and which carries a range of imprisonment of five to 40 years.

Sometime before October 29, 2023, Vikramjit Kehla, a former associate of Sunny's, using their shared street-name "Tana" agreed to transport cocaine from the USA to Canada for an unknown Asian client who has no connection to Sunny. Kehla used a transport company called AMG Trucking and its owner Narinder Shoker, both unknown to Sunny. On October 29, 2023, a cocaine shipment transported by AMG was seized at the Canadian border and eventually Shoker began cooperating with the Canadian authorities. Shoker described threats coming from Vik or Viky Kehla and Kehla's associates beginning as early as November 19, 2023 and including violence and threats occurring on December 3, 14 and 16, 2023 and January 18, February 11, 15, 17, 23, 25 and 29 of 2024. In connection with this violence there were group chats including aliases like Smooth, Jordan, Shoker, Baba and others not involved in Sunny's original conspiracy. Shoker never mentioned Sunny and there is no evidence of Sunny's involvement in any of the foregoing. However, in a sentencing submission filed on May 25 of this year, the government argued that beginning on March 7 of this year Sunny was involved in some of the violence targeted at AMG/Shoker. The latter allegations came largely from data extracted and extrapolated from the cell phone of Duprinderdeep Cheema (hereafter King), who was arrested on March 27, 2024 in Canada. King was accused of using Beant Dhillon, Arundeep Thind, Kymani Hassakourinas and Mustapha Alawiye. None of the latter four men were involved in Sunny's original conspiracy nor are known to him.

In July, 2024, a cell phone located in the cell of Sunny's co-defendant Bhupinder Singh Virk (hereafter Virk) was seized. The phone was originally attributed by MDC officials to an inmate named Smith who was Virk's cellmate. Indeed, the phone

contained a majority of data related to inmate Smith which strongly indicated that it was his phone. Without any explanation though, the incident report at the MDC was rewritten to attribute the phone to Virk. The government argues that some data on that cell phone originated with Sunny, although no messages or calls relating to the 2023-2024 conspiracy showed whether anyone using that phone was explicitly knowledgeable about the conspiracy. Instead, the government has traced information from five or six other cellphones, none of which has been seized, and alleged that the information from these phones implicates Sunny in the 2023-2024 conspiracy. There have been multiple search warrants and applications by the government investigating the 2023-24 conspiracy which have yielded information from companies including Apple, Google and false-phone-number generator MySudo. Both the AUSA assigned to this case and the lead case agent have sworn to affidavits as recently as October 11, 2024 seeking this information in relation to Sunny, Virk and/or another co-defendant Michael Habib in the alternative. Sunny's cell at the MDC where he is incarcerated has been searched approximately eight times in a targeted manner. These searches occurred as early as March 14, 2024 which was before King was arrested and the government began accusing Sunny of being involved in the Canadian crimes. No cell phones were ever found in his cell.

## APPLICABLE LAW

### A. Multiple Conspiracies

"In order to prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal. The co-conspirators need not have agreed on the details of the conspiracy, so long as they agreed on the essential nature of the plan." United States v. McDermott, 245 F.3d 133, 137 (2d Cir. 2001) (" McDermott I") (internal quotation marks omitted).

In United States v. Carpenter, 791 F.2d 1024 (2d Cir. 1986), in a case argued by District Judge Jed S. Rakoff who was at the time a defense lawyer, the Second Circuit reversed-in-part a conviction because it was charged as one conspiracy but the proof proved multiple conspiracies. Carpenter involved an insider stock trading scheme involving defendants who had misappropriated material, non-public information from *The Wall Street Journal* and the people they tipped off about insider information. Id. In sum, an insider at the paper tipped off stock-brokers who traded on the information and when they got caught by their firms, involved another person unknown to the *Journal* insider so the scheme could continue. Id. at 1026-27. The *Journal* insider was convicted after trial of crimes related to trades made on behalf of the person unknown to him. Id. The Second Circuit reversed the convictions for counts related to the tippee who was contacted by the brokers without the knowledge of the insider, stating,

"The record evidence supports the conclusion that (the *Journal* insider's) trading agreement with (the broker) was limited to specific persons. (The insider), therefore, may not be found liable as to (the broker's)' trades with or on behalf of (the person unknown to the insider), as to whom (the insider) had no agreement or knowledge. citing Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The First Circuit uses a three-pronged analysis to determine whether one or multiple conspiracies exist: "In determining whether the evidence supports the

existence of a single conspiracy, we ultimately look at the totality of the evidence. There are three factors this court has found particularly helpful in evaluating the evidence: (1) the existence of a common goal, (2) interdependence among participants, and (3) overlap among the participants. citations omitted U.S. v. Dellosantos, 649 F.3d 109, 117 (1st Cir. 2011). The Dellosantos court vacated the drug convictions of two cocaine suppliers who were convicted after trial of a conspiracy which included marijuana distribution by a client down the chain of their cocaine pipeline who sold marijuana unbeknownst to the cocaine suppliers. Id.

In United States v. Caldwell, 589 F.3d 1323 (10th Cir. 2009), the court reversed a single conspiracy conviction where it found multiple conspiracies existed. In that case, the first defendant introduced a second defendant to a third defendant, who had been the first defendant's drug supplier. Id. The defendants were all convicted after trial of a single conspiracy and the 10th Circuit reversed, finding the mere introduction of a common supplier, made by one drug dealer to another, insufficient to create a single conspiracy among all the dealers. Id. at 1331.

In United States v. Swafford, 512 F.3d 833 (6th Cir. 2008), the court also reversed a single conspiracy conviction where multiple conspiracies were proved. In Swafford, the defendant sold iodine to others knowing it would be used to make methamphetamine. Id. Some of the methamphetamine producers who bought iodine from the defendant and used it to make the drug did not know each other yet all were convicted of a single conspiracy. Id. The court reversed, holding "None of the customers to whom Swafford sold iodine for use in the production of methamphetamine directly interacted with one another except Michelle Dixon and Becky McAllister. And

while a single conspiracy does not become multiple conspiracies simply because each member of the conspiracy does not know every other member, it is necessary to show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal. citations omitted Id. at 841.

B. Due Process Protections for New Criminal Conduct allegations under 18 U.S.C. section 3553(a)

Research has not disclosed a statute or court holding discussing the precise point presented here: what are a defendant's Constitutional Due Process rights as regards allegations of new criminal conduct the government wants the sentencing court to consider to raise a sentence under 18 U.S.C. section 3553(a). However, the evolving law as regards the Sentencing Guidelines, scholarly writing and dicta in opinions dealing with different sentencing issues makes clear that such governmental overreach runs afoul of the constitution.

First, it is well-established that facts supporting a criminal sentence which were neither admitted by a defendant nor found by a jury violate the defendant's Sixth Amendment right to trial by jury. Blakely v. Washington, 542 U.S. 296 (2004). Second, effective this November, a Guidelines amendment takes effect which flatly prohibits the use of acquitted conduct in a criminal sentence. see amendment revising §1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range) to exclude federally acquitted conduct from the scope of relevant conduct considered under the sentencing guidelines, while not abrogating a court's authority under 18 U.S.C. § 3661. Third, for more than a decade, scholars have opined about the offense caused to Due

Process where uncharged conduct is permitted to raise a defendant's sentence. see THE CONSTITUTIONAL INFIRMITY OF THE CURRENT FEDERAL SENTENCING SYSTEM: HOW THE USE OF UNCHARGED AND ACQUITTED CONDUCT TO ENHANCE A DEFENDANT'S SENTENCE VIOLATES DUE PROCESS, *Loyola University New Orleans College of Law*, Volume 56 at page 376 (2010). Finally, as Supreme Court Justice Gorsuch wrote when he was still on the 10th Circuit in a case discussing sentencing procedure, "We admit the proper order of operations we've outlined rests in part on a questionable foundation. It assumes that a district judge may either decrease or increase a defendant's sentence (within the statutorily authorized range) based on facts the judge finds without the aid of a jury or the defendant's consent. It is far from certain whether the Constitution allows at least the second half of that equation." citation omitted United States v. Sabillon-Umana, 772 F.3d 1328 (10th Cir. 2014).

**ARGUMENT**

The Court should begin the proceedings on December 19 by ruling that consideration of the drug conspiracy from 2023-24 and attendant violence needs to be proven beyond a reasonable doubt to a jury. After such ruling the Court should consider all relevant facts as presented before May 25, 2024 and impose a sentence of 60 months imprisonment. Such a result will give the government ample time to indict Sunny and try him under their theory of that case before he is due to be released from prison.

There can be no serious doubt that the Kehla-Shoker-King conspiracy, which involves (a) cocaine supplier(s), client(s), armed thugs and sundry others who have in no way been connected to Sunny, is a distinct conspiracy which varies from the conspiracy to which he pleaded guilty. The drug suppliers in Sunny's underlying case were different, the transporters were different and the menu of drugs to be transported are all distinct in the two conspiracies with minimal overlap. And, there is no evidence of any remuneration Sunny stood to make. [1] Finally the time difference between the two conspiracies, one ending in November, 2022 and the other commencing in or about October, 2023, conclusively repudiates any argument that the new conduct was a continuation of the indicted conspiracy.

---

[1] Of course because this memorandum is only addressed to the procedural illegality of the government's allegations, we are barely and tangentially addressing their absurdity, which include a non-violent man parachuting into an ongoing drug deal at the last minute to contribute scorched earth directions on debt-collection with no discernible connection to the transaction. Our presentation, to the extent the Court requires us to go forward, will include proffered evidence about the shifting, impossible chronology concerning the government's presentation of electronic data and one dispositive falsehood the government attempted to sneak by this Court in response to the Court's direct inquiry about Virk's connection to the Canadian drug trade. The Court directly asked AUSA Shahabian if Virk had any connection to Canada and Shahabian responded no. But, in one of many examples showing this to be false, the government wrote in its own May 25 submission, "Law enforcement identified King as Dupinderdeep Singh Cheema through multiple avenues. First, Signal messages recovered from one of the cellphones of the defendant's co- defendant, Bhupinder Virk, include messages with the same number as King from the 400 kilo group chat, saved as "King Canada." In those messages, "King" gives Virk his business name as "Linkup Transport" at "1 Gateway Blvd" in "Brampton" Canada. King sends information for his "driver," named Karan Sharma." May 25, 2025 government letter at page 6. The 400 kilos referred to in this communication between Virk and King was cocaine Virk was transporting from the USA to Canada for Virk's own Canadian client. Perhaps most Kafka-esque is the government argument, in lieu of competent cross-examination, that Kehla invented his testimony to spare Sunny because that testimony was too good or "tailored". The latter argument included a baseless accusation of perjury by both the witness and even subornation by defense counsel, though apparently the latter argument was withdrawn.

As regards the violations of Sunny's Due Process rights, they are stark and plentiful. First, the affidavits applying for the collection of much of the "evidence" presented by the government are ripe for challenge under Franks v. Delaware, 438 U.S. 154 (1978). As stated above and in only one example, the government, by the very AUSA leading this hearing, deceptively requested records relating to Virk, Habib and Sunny but is presenting the resulting evidence only against Sunny as regards the instant new charge. Of course without Due Process there is no mechanism to challenge this warrant or apply the Exclusionary Rule. Second, the government chose not to call *any* employee from Apple, Google or MySudo as a witness, effectively depriving Sunny of his rights to confront the evidence against him. Any finding under this offensive process cannot survive Constitutional scrutiny. The simple fact is that in the new criminal conduct the victim identified Kehla, Kehla admitted committing the conduct in a thoroughly credible way and the government's attempt to prosecute multiple conspiracies without any of the important protections of the Due Process clause of the Fifth Amendment to the U.S. Constitution cannot be countenanced.

## CONCLUSION

The Court should deny the government's request to consider any new criminal conduct under 18 U.S.C. section 3553(a).