

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 17, 2024

**BY ECF AND EMAIL**

The Honorable John P. Cronan
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    **Re: *United States v. Surinder Singh Cheema*, S1 22 Cr. 618 (JPC)**

Dear Judge Cronan:

    The Government respectfully submits this letter in opposition to defendant Surinder Singh Cheema's December 12, 2024 objections to the *Fatico* hearing that took place on November 19 and 26, 2024.

    The defendant argues that evidence of his post-arrest criminal conduct cannot be considered at sentencing because it is part of a second, uncharged conspiracy, and that, to the extent the *Fatico* proceedings addressed this uncharged conduct, they have deprived him of his Due Process rights. ECF No. 248 ("Def. Br.") 8-10. These arguments are meritless and must be rejected. The Government properly presented the additional evidence, and this Court may consider it as part of the sentencing analysis under 18 U.S.C. § 3553(a).

    **I.**    **Procedural History**

    **A. Plea Agreement**

    On December 19, 2023, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to a lesser included offense of Count One of the Indictment, which charged him with conspiring to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. In the Plea Agreement, the parties stipulated that the applicable range under the U.S. Sentencing Guidelines (U.S.S.G. or "Guidelines") was 135 to 168 months' imprisonment (the "Stipulated Guidelines Range"). Plea Agreement 3.

    The Plea Agreement also contained several clauses that are standard in this District. Relevant here, these included the following:

- that "either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)," i.e., seek an upwards or downward variance, *id.* at 3;

- that the parties were not limited in presenting "to the Probation Office or the Court any facts relevant to sentencing" or making "any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)," *id.* at 4;

- that the Government was permitted to "seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution and subsequent conduct prior to the imposition of sentence," *id.*; and

- that the Government was permitted "to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement," *id.*

### B. Sentencing Disputes

On May 8, 2024, the Government submitted a sentencing submission requesting a sentence within the Stipulated Guidelines Range. ECF No. 158. On May 14, 2024, the Government filed a letter motion seeking a brief adjournment of the sentencing scheduled for May 15, 2024 and advising the Court that the Government had learned of additional evidence of the defendant's continuing narcotics trafficking even while in custody at MDC (the "Post-Arrest Conduct"). ECF No. 160. On May 25, 2024, the Government filed a supplemental sentencing submission detailing the additional evidence and requesting an above-Guidelines sentence of 25 years' imprisonment. ECF No. 167 ("Supplemental Submission").

After several adjournments, the defendant's sentencing was rescheduled for October 15, 2024. ECF No. 210. On October 7, 2024, one week before the sentencing, the defense filed a brief disputing the defendant's involvement in the Post-Arrest Conduct and alleging that the Government knew, or should have known, that the defendant's childhood friend, Vickramjit Khela, was wholly responsible for the Post-Arrest Conduct. ECF No. 224. The defense also delivered to the Court and to the Government two affidavits sworn by Khela, in which Khela claimed to be responsible for the Post-Arrest Conduct.

At the defendant's two-day *Fatico* hearing, the Government presented extensive evidence in support of the factual allegations set forth in the Government's May 25, 2024 Supplemental Submission and establishing that Khela had falsely claimed responsibility for the defendant's criminal conduct. Among other things, data extracted from a phone seized by Canadian authorities from the defendant's co-defendant Dupinderdeep Singh Cheema, a/k/a "King," showed that an

individual using three different Signal accounts (the "Signal Accounts") and the defendant's alias—"Tana"—sent King messages directing violence against the people whom the defendant believed owed him and his co-conspirators drug debts. Additional evidence recovered from a phone seized by MDC staff from the defendant's co-defendant and MDC unit neighbor, Bhupinder Singh Virk (the "Contraband Phone"), showed that the defendant was the user of the Signal accounts and had specifically used the Contraband Phone and others to talk to King. For example, IP address information, application data, and web search history showed that the Signal Accounts and MySudo phone numbers and profile pictures associated with those accounts were created and accessed from New York City, including specifically through the Contraband Phone; and additional application data and web search history showed that, around the same time the defendant sent the Signal Account messages, he accessed his personal Snapchat account and conducted searches on the Contraband Phone for subjects that he also discussed on a recorded jail call (e.g., regarding the alleged "Yakuza boss" in his unit).

The Government offered its exhibits into the record and summarized the key evidence through a demonstrative PowerPoint slide deck (GX A), and also offered to present additional evidence if the defense sought to challenge the authenticity of the exhibits. Nov. 19, 2024 Tr. 74. The defense objected to the admission of the underlying exhibits on the grounds that "the nature of the proceeding is violative of Mr. Cheema's due process rights" but confirmed that it was "not objecting on the basis of authenticity" as to any of the exhibits. *Id.* 11, 74. The defendant, in his case-in-chief, called Khela as a witness to testify remotely, during which Khela repeated many of the lies contained in his two affidavits.

The Government advised the Court of its belief that the defendant's post-arrest threats of violence and efforts to collect on drug debts is properly understood as conduct in furtherance of the same broad-scale narcotics trafficking conspiracy for which the defendant was indicted, *see* Nov. 19, 2024 *Fatico* Tr. 6-7. But the Government also confirmed to the Court that it is not relying on this conduct to seek an adjustment of the Guidelines calculation to which the parties stipulated in the Plea Agreement, *see* Nov. 26, 2024 *Fatico* Tr. 36.

## II. The Government Properly Presented Evidence of the Defendant's Post-Arrest Conduct under Section 3553(a).

The defendant alleges that the Government's presentation of evidence of the defendant's "new criminal conduct" constitutes "government overreach" and "runs afoul of the constitution." Def. Br. 7.[1] This is incorrect under the express terms of the plea agreement and as a matter of Second Circuit law.

---

[1] In addition to objecting to the presentation of any such evidence, irrespective of its content, the defendant asserts that "most Kafka-esque is the government argument, in lieu of competent cross-examination, that Kehla invented his testimony to spare [the defendant] because that testimony was too good or 'tailored.'" Def. Br. 9. In fact, the Government has shown that Kehla's testimony contained numerous demonstrable falsehoods and that Kehla's central claim—that, from outside the United States, Kehla used the Signal Accounts to send the messages at issue—cannot be reconciled with the content of the messages (e.g., referencing "wife" though Kehla is unmarried) or metadata showing that they were sent from the Contraband Phone at MDC.

As the Government explained to the Court at the *Fatico* hearing, the Government is not arguing that the defendant's Post-Arrest Conduct constitutes "relevant conduct" warranting an increase in the defendant's base offense level under U.S.S.G. § 1B1.3.[2] Rather, as set forth in the Government's Supplemental Submission, the defendant's egregious conduct while detained at MDC should be considered under the Section 3553(a) factors.

The Government's argument is proper under the terms of the Plea Agreement, in which the parties "expressly agreed that either party could 'seek a sentence outside of the Stipulated Guidelines Range based upon the factors' delineated in 18 U.S.C. § 3553(a)." This language expressly reserved the Government's right to advocate for an upward variance based on the Section 3553(a) factors. *United States v. Sealed Defendant One*, 49 F.4th 690, 696 (2d Cir. 2022) (where parties to plea agreement "*expressly* agreed that either party could 'seek a sentence outside of the Stipulated Guidelines Range based upon the [Section 3553(a)] factors,'" there is "no error, much less plain error, in allowing the government to advocate a sentence above the Stipulated Guidelines Range" (emphasis in original)).

The Government may present its arguments under Section 3553(a) even where the facts brought to the Court's attention as relevant to the Section 3553(a) factors overlap with potential Guidelines enhancements that are not included in the plea agreement and for which the Government made no argument. *United States v. Rivera*, 115 F.4th 141, 152 (2d Cir. 2024) (holding no breach of the plea agreement where Government argued that defendant should be punished under Section 3553(a) factors given his role as a leader in the conspiracy but did not argue for a Guidelines enhancement for a leadership role).

### III.   The Court Has Broad Discretion to Consider the Defendant's Post-Arrest Conduct under Section 3553(a).

The defendant argues that any consideration his Post-Arrest Conduct under the Section 3553(a) factors would violate his due process rights because the supporting evidence relates to a

---

[2] The Guidelines define "relevant conduct" as "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A).

separate, uncharged conspiracy.[3] This argument is squarely foreclosed by Second Circuit law.[4]

First, as a starting matter, this Court "retains broad discretion in imposing a sentence in accordance with the principles of sentencing expressed in 18 U.S.C. § 3553(a)," *United States v. Vargas*, 961 F.3d 566, 585 (2d Cir. 2020), and where an adequate factual basis is established, [t]he constraints of due process do not limit a sentencing court's discretion to consider any

---

[3] The defense has made an assortment of additional one-line due process allegations, but none has merit. To the extent that the defense intends to argue that the Court should not consider the Post-Arrest Conduct because the Government has not met its burden of proof, at the *Fatico* hearing the Government established the defendant's Post-Arrest Conduct by, at minimum, a preponderance of the evidence. To the extent that the defense intends to argue that the *Fatico* hearing was in some way procedurally deficient, "[d]ue process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court," *Romano*, 825 F.2d at 728, and the record makes clear that, in repeated written submissions and at the *Fatico* hearing, the defendant was provided that opportunity. As to the defense's belated contention that "the government chose not to call any employee from Apple, Google or MySudo as a witness, effectively depriving [the defendant] of his rights to confront the evidence against him," the Government did not present such custodial witnesses because the defense explicitly confirmed at the hearing that it was not challenging any of the evidence on authenticity grounds. *See* Nov. 19, 2024 Tr. 74.

As to the defense's suggestion that it should have been permitted to challenge, under *Franks v. Delaware*, 438 U.S. 154 (1978), the warrants through which the Government obtained evidence of the Post-Arrest Conduct, the defense does not cite a single intentional or material misrepresentation or omission in any particular warrant, as required to invoke the *Franks* doctrine. *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *see also* Gov't Opp. to Def. Motion to Suppress (filed under seal, public version filed at ECF No. 100) (opposing defendant's motion for a *Franks* hearing at the pretrial stage). Moreover, in support of this argument, the defendant baselessly asserts that one of the undersigned AUSAs falsely told the Court that Virk had no connection to Canada when Virk in fact communicated with King, a Canadian national (Def. Br. 9 n.1). This assertion is contradicted by the transcript:

> THE COURT: Mr. Virk has no connection to Canada?
>
> MR. SHAHABIAN: *Other than associates in the criminal conduct, no.* He's not a Canadian national.
>
> THE COURT: Okay.
>
> MR. SHAHABIAN: He had asylum from India in the United States. But as far as the government's aware, he's never lived in Canada, he has no reason to think he's getting a treaty transfer to Canada."

Nov. 16, 2024 Tr. 24 (emphasis added).

[4] The defense contends that it was unable to identify "a statute or court holding discussing the precise point presented here: what are a defendant's Constitutional Due Process rights as regards allegations of new criminal conduct the government wants the sentencing court to consider to raise a sentence under 18 U.S.C. section 3553(a)." Def. Br. 7. As detailed below, the Second Circuit has issued numerous decisions on this very issue.

circumstances or background that may aid in the determination of sentence." *Vargas v. Hoke*, 664 F. Supp. 808, 812 (S.D.N.Y. 1987) (citing *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976)). Thus, the Court may consider "hearsay statements, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal in determining sentence." *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987).

The defendant nonetheless argues that the Court cannot rely on facts that were neither admitted by the defendant nor found by a jury. Def. Br. 7. This is simply wrong. Most relevant here, a sentencing court may consider "uncharged conduct proven by a preponderance of the evidence as long as that conduct does not increase either the statutory minimum or maximum available punishment." *United States v. Ulbricht*, 858 F.3d 71, 128 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). Indeed, where there is sufficient evidentiary support, the courts in this District routinely consider "uncharged conduct" as part of their Section 3553(a) analysis. *See United States v. Cacace*, 796 F.3d 176, 190–91 (2d Cir. 2015) (holding the district court was entitled to rely on trial evidence to find, by a preponderance of the evidence, that the defendant was responsible for uncharged murders for purposes of its Section 3553(a) analysis); *United States v. Hadden*, No. 23-6822-CR, 2024 WL 4456203, at *5 (2d Cir. Oct. 10, 2024) (rejecting the defendant's challenge to an upward variance and upholding the district court's "broad discretion to consider the extensive harm that Hadden caused over many years to numerous uncharged victims, in the context of the sentencing factors listed in 18 U.S.C. § 3553(a)); *United States v. Pocinoc*, 833 F. App'x 847, 849 (2d Cir. 2020) (rejected the defendant's objections to consideration of "uncharged conduct" where the conduct was "clearly relevant 'from a history and characteristics perspective under [18 U.S.C. §] 3553(a).'").

Second, it does not matter whether the defendant engaged in the Post-Arrest Conduct as part of the charged conspiracy or as part of another conspiracy entirely, and the authorities cited by the defendant for the proposition that the Government may not use proof of multiple conspiracies to prosecute a single conspiracy are inapposite. *See* Def. Br. 5-7. It is well-established under Second Circuit law that, at sentencing, "[t]he district court is not limited to acts that constitute 'relevant conduct' under the Sentencing Guidelines, but rather may consider the broader circumstances surrounding the defendant's criminal activity, including the level of dangerousness posed by the criminal organization with whom the defendant affiliated." *United States v. Yaghmour*, No. 22-678-CR, 2023 WL 4504462, at *2 (2d Cir. July 13, 2023). Put differently, "that [the defendant's acts] are not technically 'relevant conduct' to the specific offense charged in [the indictment] does not imply that those acts are not highly relevant (in a non-technical sense) to the district court's evaluation [of the Section 3553(a) factors]." *United States v. Wernick*, 691 F.3d 108, 119 (2d Cir. 2012) (alterations in original). For this reason, in imposing sentence, the Court is entitled to rely on the evidence of the Post-Arrest Conduct to the extent it is relevant to any of the Section 3553(a) factors.

Here, the defendant's heinous Post-Arrest Conduct cuts across numerous Section 3553(a) factors and militates strongly in favor of a sentence well above the Stipulated Guidelines Range. First, the defendant's decision to orchestrate retaliatory threats and shootings with co-conspirators after entering a guilty plea speaks to the seriousness of the defendant's conduct and reinforces the need for a substantial sentence that promotes respect for the law and provides for just punishment. Second, the defendant's conduct is relevant to evaluating his personal characteristics, most notably

his demonstrated lack of remorse and willingness to engage in violence in connection with his continuing drug activities. Third, the defendant's decision to engage in such conduct even after pleading guilty and while awaiting sentencing undermines the defense's contention that the defendant is a "non-violent marijuana transporter" whose bad luck forced him to engage in more serious crimes and underscores the need for specific deterrence. Def. Br. 2. Lastly, the defendant's post-arrest conduct—including directing shootings and kidnappings, discussing potentially murdering the victims, and permitting his childhood friend, Khela, to attempt to take the fall for him through elaborate perjured testimony—shows the need to protect the public from the defendant's crimes. Supp. Submission 2, 8-9.

* * *

For the reasons set forth above, the defendant's objections to the *Fatico* hearing should be rejected. The defendant is a remorseless drug trafficker who, from behind bars, orchestrated violence against those he deemed responsible for drug debts. When he got caught—notwithstanding his substantial efforts to avoid detection—he offered Khela's perjured testimony to this Court in order to undermine these proceedings. This disturbing and continuing conduct demands a substantial sentence of 25 years' imprisonment, above the Stipulated Guidelines Range of 135 to 168 months.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/_____
    Jane Y. Chong
    Matthew R. Shahabian
    Thomas Burnett
    Assistant United States Attorneys
    212-637-2263/-1046/-1064